UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KAIUMATI K. ROCHE,

    Plaintiff,

    v.

KATIE M. LANE

    Defendant.

Civil No. 24-1354 (ADC)

## OPINION AND ORDER

Before the Court is a motion for summary judgment, as well as an accompanying statement of uncontested material facts ("SUMF"), filed by defendant Katie M. Lane ("defendant") on June 9, 2025. **ECF Nos. 17, 18, 21**. Plaintiff Kaiumati K. Roche ("plaintiff" and together with defendant, the "parties") filed a response in opposition on July 30, 2025, with an accompanying opposing statement of uncontested material facts ("OSUMF") and an additional statement of uncontested material facts ("ASUMF"). **ECF Nos. 23, 23-1, 23-2**. Plaintiff filed a reply on August 22, 2025, with an accompanying reply to the ASUMF ("RASUMF"). **ECF Nos. 83, 83-3, 83-4**.

For the reasons set forth below, the defendant's motion for summary judgment is **DENIED.**

## I.    Factual and Procedural Background

The parties agree on very few facts regarding their personal and professional history. While they agree that they were both in a romantic relationship with one another, lived together

in Puerto Rico and Oregon between 2018 and 2023, and worked together on a short-term rental business at a property in Aguadilla (the "Aguadilla property"), **ECF No. 8-1**, at 2; **ECF No. 17**, at 1, their accounts outside these core facts vary dramatically.[1] Neither party, however, provides sufficient evidence to support these divergent factual accounts. In fact, their SUMF and ASUMF draw principal support from opposing affidavits of the parties themselves (in defendant's case, herself and her certified public accountant ("CPA")). *See* **ECF Nos. 18-1**, **18-4, 23-4**.

Plaintiff alleges that he and defendant "acquired property through their joint effort and increased the value of said property," and that therefore he is "entitled to his share in commonly held property, especially his share in the [Aguadilla] property and in Villa San Carlos LLC." **ECF No. 8-1**, at 2, 7. Specifically, plaintiff alleges that he identified a property in Aguadilla which defendant later purchased, and that the two determined they would live at the property and use it for a short-term rental business. **ECF No. 23**, at 5. While defendant paid for the property with her funds, plaintiff alleges that he and defendant agreed that he would contribute "sweat equity" to the property in exchange for "up to 50% of ownership and profits" of the LLC that operated their short-term rental business. **ECF No. 23**, at 5.[2] Plaintiff argues that he and defendant signed an LLC operating agreement ("Operating Agreement") – which plaintiff

---

[1] This is, in fact, not the first time that plaintiff has sought to contest whether he has an ownership share of property acquired during the parties' romantic relationship. Formerly, plaintiff filed a claim in Oregon regarding a different LLC, which was adjudicated in a 2024 arbitration. SUMF ¶¶ 24-26.

[2] Because defendant argues in her reply that defendant's "sweat equity" claim raises a new theory of liability, this argument is incorrect. **ECF No. 27**, at 2-3. The "sweat equity" argument does not present a new theory of liability but provides factual color to plaintiff's community assets claim.

attaches as an exhibit to his ASUMF, **ECF No. 23-3** – to memorialize this arrangement, with each pledging their ownership interest in the Aguadilla property to the LLC. *Id.*, at 4. Plaintiff alleges that he worked "55 to 75 hours a week performing arduous, intensive, uncomfortable and essential works of construction, maintenance for the property as well as being in charge of the most fundamental aspects of operating the short-[term] rental business," and that, as a result of his efforts, the short-term rental business increased the price of its property listings. *Id.*, at 5.

Defendant, however, moves for summary judgment on the basis that she is "the sole registered member and legal owner of the LLC, that she alone purchased [the property at issue] with her personal funds" and that, because plaintiff "never made a capital contribution, and never held legal title to the property or business," he has "no property rights" and his "claims of unjust enrichment and co-ownership must fail." **ECF No. 17**, at 2-3. Defendant argues vigorously, on the basis of her affidavits and various official Puerto Rico Department of State LLC records, that the LLC "always operated as a single-member entity" and that the "draft Operating Agreement" did not "create enforceable rights in favor of [plaintiff.]" *Id.*, at 3.

On April 8, 2024, plaintiff filed a complaint in the Puerto Rico Court of First Instance, Aguadilla Part, claiming that he and defendant acquired assets and debts together during "a consensual and cohabiting relationship from 2018 until mid-2023," and requesting that the court "order the division of the community property existing between the petitioner and respondent. . . ." **ECF No. 1-2**, at 1, 3. On August 8, 2024, defendant removed the case to federal court, where it was assigned to the undersigned. **ECF No. 1**. Defendant answered the complaint

on September 25, 2024. **ECF No. 5**. On February 13, 2025, plaintiff filed the operative, amended complaint, **ECF No. 8-1**, to which defendant responded with the instant motion for summary judgment. **ECF No. 18**. Plaintiff opposed the motion on July 30, 2025, **ECF No. 23**, and defendant replied on August 22, 2025, **ECF No. 27**.

## II.     Legal Standard

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and it is "material" if it potentially affects the outcome of the case. *See Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004); *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016) (citations omitted); Fed. R. Civ. P. 56(a).

Although the court states the facts in the light most favorable to the party against whom summary judgment is entered, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted). The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.* Thus, to prevail at the summary judgment stage, defendants must demonstrate that, even admitting well-pleaded allegations in the light most favorable to plaintiffs, the applicable law compels a judgment in their favor.

In order to defeat a properly supported motion for summary judgment, the non-moving party must set forth facts showing that there is a genuine dispute for trial. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). L. Civ. R. 56(c) states, in pertinent part, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." *Id.*  Moreover, L. Civ. R. 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." The nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006). If any fact is not supported by "a citation to the specific page or paragraph of identified record material supporting the assertion," the court may "disregard" the unsupported statement. *Quintana-Dieppa v. Dep't of Army*, 130 F.4th 1, 8 (1st Cir. 2025) (citing D.P.R. Loc. R. 56(c)). Where a supported fact is not properly controverted, it "shall be deemed admitted." *Id*. Litigants thus ignore Local Rule 56(c) at their peril. *See López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023).

III.    Discussion

A.    Uncontested Material Facts

Although the Court reviewed every statement submitted by the parties, it will only consider and include in this Opinion & Order those facts that are material for purposes of summary judgment as mandated by Fed. R. Civ. P. 56, the uncontested material facts ("UMF"). Any proposed fact not included below is deemed immaterial or contested.

1.    Plaintiff and defendant were in a romantic relationship where they lived and worked together between 2018 and 2023 and were never married. **ECF No. 17**, at 1; **ECF No. 23-4**. The relationship ended in 2023. **ECF No 27**, at 4.

2.    In late 2019, plaintiff found a listing for a property in Aguadilla (the "Aguadilla property") on Facebook. Both plaintiff and defendant visited the property and discussed that the property could serve both as a primary residence and short-term rental property. ASUMF ¶ 9.

3.    On November 26, 2019, defendant formed a sole-member limited liability company, named Katie Lane Consulting LLC. **ECF No. 18-2**. The sole-member LLC's name was changed to Katie Lane PM Consulting LLC, and subsequently to Villa San Carlos LLC (the "LLC"). SUMF ¶ 1; **ECF No. 18-1**. The LLC at all times was registered solely under defendant's name as the Resident Agent and Authorized Person. SUMF ¶ 2; **ECF No. 18-2**. Plaintiff never made any capital contributions to the LLC. SUMF ¶ 3; **ECF No. 18-2**.

4. On December 2, 2019, defendant purchased the Aguadilla property for $150,000 – which was appraised at $211,000 – and paid for the property in cash with her own funds. SUMF ¶ 4; ASUMF ¶¶ 1, 12. Plaintiff did not contribute any funds to the purchase of this property. SUMF ¶ 4. The deed to the Aguadilla property was only ever in defendant's name. *Id*.

5. The Aguadilla property required some repairs for use as a short-term rental. ASUMF ¶ 11. Plaintiff performed work and repairs on the property, including gardening, landscaping, and working with third-party contractors. ASUMF ¶¶ 14, 16, 19, 20. Defendant paid for all major repairs at the Aguadilla property. SUMF ¶ 5.

6. After plaintiff lost his employment as a director of a program for at-risk youth, defendant paid for all utilities and approximately 90% of plaintiff's living expenses (*i.e.* food, clothing, health insurance, student loans). SUMF ¶ 6. Defendant paid for these living expenses and sent plaintiff additional payments in exchange for his work on the short-term rental business. ASUMF ¶ 25; RASUMF ¶ 25.

7. Plaintiff, after losing his employment, established a diving tours business that attracted guests to the Aguadilla property's short-term rentals. RSUMF ¶¶ 19, 23; ASUMF ¶ 22.

8. In 2022, defendant changed the name of the LLC operating the short-term rental business from Katie Lane PM Consulting LLC to Villa San Carlos LLC, in

recognion of plaintiff's work on the property. ASUMF ¶ 24.

9. On February 1, 2022, the parties both signed an Operating Agreement for Villa San Carlos LLC which designated plaintiff and defendant each with 50% ownership interest of the LLC. SUMF ¶ 18; **ECF No. 23-3** (Ex. A); ASUMF ¶ 25.

10. Defendant was responsible for the business debts, legal obligations, and tax filings for the LLC, and all tax returns from 2019-2023 for the LLC were filed as single-member corporate returns. SUMF ¶¶ 9, 16. No partnership tax returns were ever filed for the LLC. *Id*. ¶ 16.

11. Plaintiff assisted with guest relations and bookings for the short-term rental business at the Aguadilla property, including assisting guests during power outages. ASUMF ¶¶ 18, 21.

12. During the parties' operation of the short-term rental business, the short-term rental nightly rate at the Aguadilla property increased from $50.00 to $200.00 per night. ASUMF ¶ 23.

**B.     Summary Judgment: Defendant Fails to Establish Absence of Community Assets Regime**

While plaintiff's legal claims are far from clearly delineated in the complaint, his one clear request for relief is that he "is entitled to his share in commonly held property, especially his share in the San Carlos property and in Villa San Carlos LLC. . . ." **ECF No. 8-1**, at 7. Accordingly, defendant's motion for summary judgment requests that the Court find she and plaintiff "did

not form a community of assets or partnership during their relationship." **ECF No. 17**, at 12. Defendant makes a series of additional arguments to urge the Court to dismiss plaintiff's community asset claims, including that: (1) the "Oregon Arbitration Award bars and refutes [plaintiff's] claims of ownership and unjust enrichment," (2) "[p]laintiff cannot selectively enforce the draft operating agreement while disregarding its unexecuted status and arbitration clause," (3) "[n]o conveyance or donation of the Aguadilla property to Plaintiff occurred under Puerto Rico law and [defendant] did not require [plaintiff's] consent to sell the Aguadilla property," and (4) "[t]he dissolution of the LLC was lawful and did not require Plaintiff's consent." *Id.*, at 16, 17, 21, 24. While defendant's primary claim regarding community property and the LLC partnership fails, and is therefore dispositive of her summary judgment claims, for the sake of completeness, each of these arguments will be addressed in turn.

   *1. Community Assets and LLC Partnership*

  To succeed on summary judgment, defendant must illustrate – through the uncontested material facts – that she and plaintiff formed neither a community of assets nor intended to form a valid LLC partnership during their relationship. There are no uncontested material facts negating either of these issues at the summary judgment stage, as explained below.

  To dismiss plaintiff's claim regarding community assets, the uncontested material facts must establish either that there was no "express or implied agreement spontaneously arising from the human and economic relationship between the parties" or that common ownership of property is not "necessary in the interest of justice to prevent unjust enrichment acknowledging

the value of the property, assets or services contributed by Plaintiff and the profits thereof."

*Buscaglia v. Vasarely*, No. CIV. 09-2196 (JAG), 2010 WL 2733703, at \*2 (D.P.R. July 8, 2010) (citing

*Caraballo Ramírez v. Acosta*, 104 D.P.R. 474 (1975)).

Plaintiff argues that he and defendant formed "a communal assets regime" because they

"acquired property through their joint effort." **ECF No. 8**, at 2 (citing *Caraballo*, 104 D.P.R. 474,

481). Although defendant counters that "[p]laintiff erroneously invokes" *Caraballo*, her attempt

to distinguish its facts from the instant case fails. Her sole argument against *Caraballo*'s

application is that it "involved a 38-year extramarital relationship in which the plaintiff

concubine and the married decedent demonstrably cohabited, raised children and nephews, and

operated multiple family businesses, including a coffee shop and transportation service, with

substantial mutual labor and income pooling over decades," and therefore it is distinguishable

from her and plaintiff's five-year personal and business relationship. **ECF No. 17**, at 12. Yet

defendant offers no alternative case or legal standard with which to assess whether a community

of assets existed between her and plaintiff. *See id.*, 12-16. *Caraballo* is the leading authority in

Puerto Rico law on extra-marital community property, and although certain factual elements

are distinguishable, its sound legal standard applies here.

The parties had both written and implied agreements to share ownership, thereby

creating a community assets regime. Plaintiff and defendant had an express written agreement

to share ownership of the LLC. *See* UMF ¶ 9; **ECF No. 23-3**. Additionally, the parties had an

implied agreement, whereby both parties lived together at the Aguadilla property and operated

the short-term rental business together. *Id.*, ¶¶ 5-9, 11-12. Plaintiff performed work and repairs on the property, including gardening, landscaping, and working with third-party contractors. *Id.*, ¶ 5. In 2022, defendant changed the name of the LLC in recognition of plaintiff's contributions to the Aguadilla property and the short-term rental business. *Id.*, ¶ 8. Moreover, the parties behaved as though they were impliedly within a community assets regime, with defendant supporting plaintiff with living expenses when defendant was under or unemployed. *Id.*, ¶ 6. Both the express and implied agreements of the parties formed a community assets regime.

Likewise, plaintiff and defendant intended to share ownership in an LLC partnership. Although defendant diligently maintains that the Operating Agreement between her and plaintiff designating each with 50% ownership interest in the LLC is a "**draft**," **ECF No. 17**, at 13, 17-19 (emphasis in original), she provides no evidence for the Court to conclude that the executed agreement, signed by both parties, is anything other than an enforceable agreement between the parties. *See Citibank Glob. Markets, Inc. v. Rodríguez Santana*, 573 F.3d 17, 24 (1st Cir. 2009) ("Under Puerto Rico law, a contract has three elements: consent, a definitive (and legal) object, and consideration." (citing P.R. Laws Ann. tit. 31, § 3391)). Defendant does not argue that any error in the substance or object of the contract exists, and therefore the "validity of [the] contract and of the consent is presumed." *Id.* The Operating Agreement was executed by both parties. It need not be "filed, acted upon, or accompanied by a public deed" to serve as evidence that defendant intended to designate plaintiff a 50% ownership interest in the LLC. **ECF No. 27-**

**1**, at 9; *see* **ECF No. 23-3** (the Operating Agreement, signed by both plaintiff and defendant, stating that it is "ADOPTED as of this 1st day of February 2022 constituting all of the members, by the undersigned. . . .").

On the basis that the parties formed community property and intended to share ownership in an LLC partnership, the Court will not dismiss plaintiff's claims regarding the same and therefore **DENIES** defendant's motion for summary judgment.

2.      *Arbitration Award*

As discussed above, *supra* at 1 n.1, in 2024, the parties previously arbitrated claims regarding plaintiff's ownership interest in a different LLC and different property in Oregon. **ECF No. 17**, at 16. Defendant prevailed in this arbitration, and therefore argues that, in this litigation, the Oregon arbitration award should "support[] summary judgment by showing that Mr. Roche has already failed to prove the same claims on nearly identical facts." *Id.*, at 17. Indeed, "[f]inal arbitral awards are entitled to the same preclusive effect as state court judgments, at least as concerns claims and issues actually raised." *Wolf v. Gruntal & Co.*, 45 F.3d 524, 528 (1st Cir. 1995).

Although defendant argues that the Oregon arbitration involved "substantially similar claims," she neglects to detail why the Oregon arbitration involved an entirely different LLC, the Barnes Butte Bungallow, LLC, and entirely different properties located in Oregon. **ECF No. 17**, at 16-17. There is no reason why the Oregon arbitration award with entirely distinct claims

and issues would have any preclusive effect on this proceeding. This argument has no effect on

defendant's summary judgment claims.

>            3.      *The Operating Agreement*

On or around February 1, 2022, when the parties were still in a romantic relationship,

they executed an Operating Agreement to share ownership interest of the LLC. **ECF No. 23-3**.

Defendant now argues that, even were the operating agreement executed (it was, *see supra*, at

11; **ECF No. 23-3**), plaintiff cannot rely on the Operating Agreement for his community property

and LLC partnership arguments without this Court also enforcing the agreement's arbitration

clause. This argument is incorrect. Had defendant wanted to enforce the arbitration clause, she

had every opportunity to accept the validity of the Operating Agreement and move this Court

to compel arbitration. *See Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 207 (1st

Cir. 2019) ("The FAA allows one party to an arbitration agreement to ask the court to put the

litigation on hold and force the other party to arbitrate the disputes." (citing 9 U.S.C. § 4)).[3] As

discussed above, defendant continues to insist that the Operating Agreement is a draft and

---

[3] In her answer to the original complaint, defendant made a general claim of lack of "jurisdiction" due to a mediation or arbitration clause in the LLC's operating agreement. *See* **ECF No. 5** at 2-3. However, plaintiff filed an amended complaint. *See* **ECF No. 11**. Instead of filing a responsive pleading, defendant filed the instant motion for summary judgment. **ECF Nos. 17, 18**. In her motion for summary judgment, defendant does not move for judgment based on lack of jurisdiction. *Id*. Indeed, aside from making reference to mediation or arbitration to sustain her position that plaintiff cannot "selectively enforce portions" of the operating agreement, there is no request for dismissal based on lack of jurisdiction. *See* **ECF No. 18** at 17-18. Moreover, defendant did not demand arbitration, nor did she otherwise move for mediation of the claims presented before this Court. *Id*. Thus, even if the operating agreement contained a valid and enforceable clause for mediation or arbitration, defendant waived those rights. *See Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Loc. Union No. 633 of New Hampshire*, 671 F.2d 38, 42 (1st Cir. 1982) ("it has long been held that parties are free to waive their rights to arbitration under a contract and proceed to present their contractual dispute to a court….").

moved for summary judgment. Yet again, this argument has no effect on defendant's summary judgment claims.

### 4. *The Aguadilla Property*

Next, defendant argues that plaintiff's "claim of a 50% ownership interest in the Aguadilla property is fatally flawed because no valid transfer or donation of the property ever occurred under Puerto Rico law." **ECF No. 17**, at 22. Just as it is inapposite whether the Operating Agreement was "filed, acted upon, or accompanied by a public deed" to serve as evidence that defendant intended to designate plaintiff with a 50% ownership interest in the LLC, **ECF No. 27-1**, at 9, so too is it unnecessary for a "valid transfer or donation" of the Aguadilla property to have occurred for plaintiff to claim an ownership share in the property. As explained above, under Puerto Rico law, the parties maintained both an express and implied community assets regime. *Supra,* at 9-12. It is therefore of no use to defendant's summary judgment claim that there was no "valid transfer or donation" of the Aguadilla property, as under Puerto Rico law, there was a community assets regime. *See Caraballo*, 104 D.P.R. 474, 481. On this summary judgment record, the Court will not dismiss plaintiff's community assets claim, with the amount of such claim to be determined at trial.

### 5. *LLC Dissolution*

Finally, defendant argues that plaintiff's "claim that the dissolution [of the LLC] is void as a matter of law must be dismissed." **ECF No. 17**, at 26. Neither plaintiff's argument nor defendant's rebuttal on this matter has any bearing on whether plaintiff has a valid community

assets claim regarding the LLC partnership. The manner and nature of the LLC dissolution has no effect on whether defendant intended to designate plaintiff with a 50% ownership interest in the LLC, *supra* at 11-12, and therefore also has no effect for the purposes of her summary judgment motion.

## IV.    Conclusion

The Court finds that defendant has failed to demonstrate that plaintiff's claims regarding community assets and the LLC partnership warrant dismissal. Accordingly, and for the reasons stated above, the Court **DENIES** defendant's motion for summary judgment at **ECF No. 17**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 17th day of March, 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**